UNITED STATES DISTRICT COURT
DISTRICT OF OHIO



John A. Olagues, Pro Se
A shareholder of Huntington Bancshares Inc

        Plaintiff                                Private Right of Action
                                               Under Section 16 b of the
                                               Securities Act of 1934
                                               CIVIL ACTION No. 2: 17 CV 0049
        Versus                               Judge Sargus, Magistrate Judge Deavers

Stephen D. Steinour, CEO and Chairman
Of Huntington Bancshares Inc and
Huntington Bancshares Inc

        Defendants

<u>Plaintiff's Response to Huntington Bancshares Inc.'s Opposition to Plaintiff's Motion to Take Judicial Notice.</u>

Mr Trafford, attorney for Huntington Bancshares throughout his pleading has alleged that Olagues has made vexatious filings in section 16 (b) cases in several courts.

Black's Law Definition of Vexatious litigation is below.

> <u>Endorsement</u> or claim pleading that it is frivolous, cause prejudice, discloses no Reasonable cause, is an <u>abuse of process</u>. Also known as <u>frivolous action</u> or suit, <u>vexatious proceeding</u>.

None of the filings in any court under section 16 (b), have been vexatious and none have been declared by any court to be vexatious and Mr. Trafford has never produced one that was vexatious.

1

Mr. Trafford has alleged that Plaintiff, Olagues has been arrested and convicted of a crime.

It is true that Mr.Olagues was arrested 4 times in Louisiana at his home, where the Marin County California Assistant District Attorney, alleged to two governors of the state of California that Olagues was a fugitive from California. He alleged that a crime was committed in Louisiana while Olagues was physically in Louisiana. The Marin ADA claimed that Olagues violated his wife's sole custody rights and illegally removed the children from California. The Marin ADA claimed that Olagues violated a custody order issued in California, although there was no Custody order from California.

The attempts to extradite Olagues to California as a fugitive were denied by a Louisiana Judge as the District Attorney in Louisiana was not able to show that Olagues was a fugitive.

In Marin County court, the Marin ADA stated that his applications to two governors were changed in the Governor's office after he filed them under penalty of perjury. The Marin ADA also stated in Court, in response to a question from the presiding Judge, that there was no prohibition from Olagues taking his children from California. This admission by ADA Kousharian contradicted several statements by him that were made under penalty of perjury that Olagues illegally removed his children from California .

Proof was supplied that demonstrated that Olagues had equal joint custody with his ex-wife at the time of the alleged crime and that the Marin ADA and his investigator signed false documents under penalty of perjury that his ex wife had sole custody.

A trial was had and there was a hung jury. The judge then promised the jury that he would be lenient on defendant if they found him guilty.

They did so and the judge declared Olagues guilty, with both the jury and Judge expressing their respect for defendant Olagues in a statement in court.

2

The court dealt with the case without a sentence imposed and probation was granted. In California, when the judge handles the case in that manner, there is no conviction, according to the California Supreme Court.

The highest authority in California, the California Supreme Court stated in Stephens v. Toomey 51 Cal. 2d 864, (1959) that after a finding of guilt, there is no conviction without imposition of a sentence. Page 869- 871

When the probation is served and completed without a sentence ever been imposed, the status of the defendant, as stated by the California Supreme Court in Stephens v. Toomey, is as if he were never prosecuted. Page 871

That is exactly the status of Mr. Olagues now.

Plaintiff has supplied documents to the court in the Requests for Judicial Notice to support his 16 (b) claims and to refute Mr. Trafford's false claims. Perhaps Mr. Trafford can demonstrate what the prison sentence was. Probation is not a sentence in California. Perhaps Mr. Trafford can demonstrate where Olagues was when the crime was allegedly committed.

Was it Louisiana or California? He was in Louisiana at the time he allegedly committed a crime.
What was the charge? The charge after ADA Kousharian admitted he perjured himself by claiming that Olagues was not prohibited from removing his children from California, was that he held them in Louisiana for 5 days too long.

Were the children or his ex wife residents of California? Answer No. They were residents of New Zealand.

Was there a custody order from California? Answer No.

How can California charge a person with a crime that allegedly happen 100% in Louisiana, when none of the persons were residents of California and no resident of California was harmed. They can not legally do it but they did it anyway.

3

Was Olagues a fugitive from California? Answer. No. But he was arrested 4 times as a fugitive.

On page two of his most recent filings with the court Mr. Trafford continues to make claims of vexatious litigation without one bit of support and never has provided any.

He claims that Plaintiff cannot bring a suit under section 16 b of the 1934 Securities Exchange Act as a Pro se plaintiff. This runs counter to the clear language in several U.S. Supreme Court Cases, such as on the pages below:

**The U.S. Supreme Court in Gollust v. Mendell , 501 U.S. 115 said:**

*(a) Section 16(b) provides standing of signal breadth, expressly limited only by the conditions that the plaintiff be the "owner of [a] security" of the "issuer" at the time the suit is "instituted." Any "security" - including stock, notes, warrants, bonds, debentures, puts, and calls, 15 U.S.C. 78c(a)(10) - will suffice to confer standing. There is no restriction in terms of the number or percentage of shares, or the value of any other security, that must be held."*
 *and*
 *"To enforce this strict liability rule on insider trading, Congress chose to rely solely on the issuers of stock and their security holders. Unlike most of the federal securities laws, 16(b) does not confer enforcement authority on the Securities and Exchange Commission. It is, rather, the security holders of an issuer who have the ultimate authority to sue for enforcement of 16(b)." and*
 *"If the issuer declines to bring a 16(b) action within 60 days of a demand **by a security holder,** or fails to prosecute the action "diligently," 15 U.S.C. 78p(b), then the **security holder** may "institut[e]" an action to recover insider short-swing profits for the issuer. Ibid."*

4

*And in the Supreme Court Case*

*Reliance Electric Co. v. Emerson Electric 404 U.S. 418, 92 S. CT 596*

*"The history and purpose of 16 (b) have been exhaustively reviewed by federal courts on several occasions since its enactment in 1934. See, e. g., Smolowe v. Delendo Corp., 136 F.2d 231; Adler v. Klawans, 267 F.2d 840; Blau v. Max Factor & Co., 342 F.2d 304. Those courts have recognized that the only method Congress deemed effective to curb the evils of insider trading was a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great. As one court observed:*
*"In order to achieve its goals, Congress chose a relatively arbitrary rule capable of easy administration. The objective standard of Section 16 (b) imposes strict liability upon substantially all transactions occurring within the statutory time period, regardless of the intent of the insider or the existence of actual speculation.* ***This approach maximized the ability of the rule to eradicate speculative abuses by reducing difficulties in proof.*** *Such arbitrary and sweeping coverage was deemed necessary to insure the optimum prophylactic effect." Bershad v. McDonough, 428 F.2d 693, 696. And*

## Also The Supreme Court said in Warth v. Seldin 422 U.S. 490 (1975)

*"Moreover, Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules. Of course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants. E.g., United States v. SCRAP, 412 U. S. 669 (1973).*

*But so long as this requirement is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others, and, indeed, may invoke the general public interest in support of their claim. E.g., Sierra Club v. Morton, supra at 405 U. S. 737; FCC v. Sanders Radio Station, 309 U. S. 470, 309 U. S. 477 (1940)."*---------------------------

5

In addition to the U.S. Supreme decisions we have the SEC affirming in the August 9, 2005 SEC Release *[RELEASE NOS. 33-8600; 34-52202; 35-28013; IC-27025;* File No. S7-27-04] on pages 1 and 3 that this proceeding is a private right of action. See Exhibit 1

Also we have the foremost expert on Section 16 (b) in the United States, Arnold S. Jacobs stating that Congress created an express private right of action and that applies to all Section 16 (b) cases. He explains that a suit under 16 (b) is not a derivative suit, where the plaintiff shareholder is representing the issuer.

Arnold Jacobs states:

*"The cause of action is not derivative at all; rather it is one possessing an independent statutory origin. Therefore procedural restrictions on derivative suits do not burden Section 16 (b) actions"*

See Exhibit 2 containing 7 pages that are by Arnold Jacobs support the position of the Plaintiff here.

On page 2, Attorney for Defendants, Mr. Trafford., makes the false claim that:

"Plaintiff's practice is to send letters to companies alleging that routine stock transactions conducted by their executives violate Section 16(b). Id. He then threatens to bring a meritless lawsuit unless he is paid a "consulting fee" that he is neither entitled nor permitted to receive under law. Id. When companies like Huntington refuse to pay him off, he files pro se litigation in the hopes of forcing a settlement. Id. But under federal law, Olagues cannot assert a Section 16(b) claim — which is brought on behalf of a corporation — on a pro se basis. Cavanaugh v. Cardinal Local Sch. Dist., 409 F.3d

6

Every element of the paragraph from Mr. Trafford's Opposition to Plaintiff's Motion to take Judicial Notice is false.

A Plaintiff shareholder seeking to enforce section 16 (b) of the 1934 Securities Exchange Act must notify the issuer that the officer or director has violated section 16 (b) and that the issuer must recover the profits made. If the issuer refuses to seek recovery, the only way to enforce 16 (b) is for a shareholder to seek recovery by suit if necessary. This is exactly what is in section 16 (b), the SEC releases and the U.S. Supreme decisions noted in this response.

In most of the 16 (b) suits the Plaintiff filed, the matched transactions involved non exempt market purchases of stock matched with non exempt dispositions of shares to the issuer for payments of tax liabilities upon vesting or exercise prices upon exercises. The issuers and the officers and directors agree that the market purchase are not exempt from Section 16 (b), but claim that the disposition to the issuers of shares are exempt because the dispositions satisfy the specificities of the approval requirements under SEC Rule 16 b-3(e).

However, upon examination of the SEC Form 4s we find that the officers and directors never use Code "D" in the Column 3 of Table 1. They enter Code "F"

Code "D" says - Disposition to the issuer of issuer equity securities pursuant to Rule 16b-3(e).

Code "F" says - Payment of exercise price or tax liability by delivering or withholding securities incident to the receipt , exercise or vesting of a security issued in accordance with Rule 16b-3.

7

And the person filing the SEC Form 4 must use the Code "that most appropriately describes the transaction". See paragraph 8 of the SEC General Instruction for entries in Form 4. See Exhibit 3

On SEC Form 4 we also find the Sentence:

" Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a)."

When the defendants here entered Code "F", they are committed to the statement that the disposition of shares was for "Payment of exercise price or tax liability by delivering or withholding securities incident to the receipt , exercise or vesting of a security issued in accordance with Rule 16b-3" and that Code "F" "most appropriately describes the transaction".

However, in their responses to this suit, they claim that the dispositions are exempt from Section 16 (b) since the " Disposition to the issuer of issuer equity securities pursuant to Rule 16b-3(e). "

They claim the exemption in the face of the SEC staff saying in 2007 that when the issuer has discretion (as is clearly the case here), the required specificity of the approval requirements of SEC Rule 16 b-3(e) are not satisfied. But they chose not to enter "D" on the SEC Form 4, thereby claiming the "F" is the most appropriate description of the transaction".

So why did the enter "F" on the form 4 but now claim "D" as a defense to this suit.

They did so since they know that entering "D" on the Form 4 contradicts the SEC staff and is an intentional misstatement and they could be charged with a violation of Title 18, section 1001. So they chose to enter "F" on the Form 4.

But they believe that they can deceive this court that the dispositions to the issuer are pursuant to SEC Rule 16 b-3(e), thereby making the dispositions exempt from section 16 (b).

8

On page 3 of the Defendants Opposition to Motions for Judicial Notice, we find the following:

"For example, Exhibits 1 and 2 attached to his first request are (i) an SDNY Order to Show Cause warning Olagues he could not proceed pro se in a Section 16(b) suit he filed against Jamie Dimon, (ii) Olagues's response to that Order, and (iii) a scheduling order issued by the Court. Dkt. Nos. 10-1, 10-2. In his motion for judicial notice, Olagues claims that these documents "make 100% clear" that the SDNY permitted him to proceed pro se. Dkt. No. 10 at 210. But as shown in defendants' reply brief, the SDNY did not allow Olagues to proceed pro se. Dkt. No. 18 at 310-311. To the contrary, just five days after the SDNY held a conference on the Order to Show Cause, Olagues hired a lawyer to appear on his behalf."

The above paragraph is a misrepresentation of what happened.

The Court ordered Plaintiff Olagues to show cause that he could proceed pro se. He did not warn Plaintiff about anything. Sullivan and Crowell, attorneys for Dimon did not request the Showing of cause in any writing or verbal responses. Plaintiff responded by showing cause that he could proceed pro se and accepted the showing and did not dismiss the suit. The was no order dismissing the case or order that Olagues could not proceed pro se. He was not ordered to get an attorney.

Olagues, however, since the Dimon case was 10 times as large as the one before the court here decided to find an attorney and did so shortly thereafter. Mr. Trafford's paragraph is merely meant to deceive this court as he has done throughout this case from the start.

Mr. Trafford continues with his deception of this court on page 4 claiming that Plaintiff has been convicted of a crime. In California there is no conviction when there is a finding of guilt when no sentence is imposed. Plaintiff has submitted the Toomey v. Stephens decision from the California Supreme Court 51 Cal. 2d 864 (1959), which clearly confirms that a guilty verdict without a sentence is not a judgement of conviction.

Plaintiff has shown court reports of the expressions of the Jury and the Judge respecting him for what he did and that no sentence was imposed. Plaintiff showed the Marin ADA answering Judge Graham's question where the Marin ADA admitted he perjured himself in earlier court filings in California and in Louisiana.

9

Yet Mr. Trafford insists that Olagues was convicted. Let Mr. Trafford supply to this court the jail sentence that was imposed. Or maybe Mr. Trafford can show that in California there is some law that makes a guilty verdict without a sentence, a conviction. Or maybe he can ask the Marin District attorney to show a definition of a "conviction" in California. What was Plaintiff found guilty of, that the Jury and the Judge expressed respect for him? Where was the crime committed? Why was he prosecuted in California if the actions took place solely in Louisiana? Why was he arrested 4 times in attempts to extradite to California, all of which failed.

On Page 4, Mr Trafford still tries to claim that Olagues was not allowed to proceed prose, which is another false statement of his. Perhaps he can show the court decision where Plaintiff was denied the right to proceed pro se. He can not as there is none. The fact that Olagues hired an attorney does not mean he was not allowed to proceed pro se.

On page 5 Mr. Trafford continues to try to refute the ideas stated in court records to support his idea that Plaintiff was convicted.

On page 8, Mr Trafford again claims that the Plaintiff's claims here and in other case are baseless litigation and that he has a history of vexatious litigation, although he has not produced one filing of vexatious litigation or baseless litigation. All of the elements of violations of section 16 (b) were shown in earlier filings and in this filings. All of his positions are supported by the SEC staff, the ABA and the NY State BA, and the IRS, and clear cases from the US Supreme court and the foremost experts in section 16 (b) law.

Respectfully Submitted;

*John Olagues*
John Olagues

10